UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KRISTEN WOLFENBARGER, o/b/o | ) | |
| MICHAEL WOLFENBARGER (Deceased) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-CV-326-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14].  Now before the Court are

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19].

Plaintiff additionally filed a Response [Doc. 20] to Defendant's Motion for Summary Judgment.

Kristen Wolfenbarger ("Plaintiff"), on behalf of Michael Wolfenbarger ("Wolfenbarger"), seeks

judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of

Defendant Andrew M. Saul ("the Commissioner").  For the reasons that follow, the Court will

**DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On January 13, 2015, Wolfenbarger filed an application for disability insurance benefits

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability beginning on April 15, 2015. [Tr. 12]. After his application was denied initially and upon reconsideration, Wolfenbarger requested a hearing before an ALJ. [Tr. 83–85]. A hearing was held on February 14, 2017. [Tr. 28–43]. Michael Wolfenbarger passed away on March 20, 2017. [Tr. 171], and his widow, Kristen Wolfenbarger, subsequently filed a Notice Regarding Substitution of Party [Tr. 134] on April 9, 2017.

On November 21, 2017, the ALJ found that Wolfenbarger was not disabled until November 28, 2016, when he reached the age of 55 and qualified for benefits pursuant to Rule 202.04 of the Medical Vocational Guidelines. [Tr. 8–22]. The Appeals Council denied Plaintiff's request for review on July 18, 2018 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 9, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant did not engage in substantial gainful activity after alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, April 15, 2015, through the date of his death on March 20, 2017, the claimant had the following severe impairments: back pain, knee pain, status-post knee replacement, osteoarthritis, diabetes mellitus with neuropathy, and repressive disorder (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, April 15, 2015, the

claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that from April 15, 2015, through the date of his death, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally perform bending, stooping, kneeling, squatting, crouching, crawling, and climbing.  He could deal with people one-third of the time.

6.  From April 15, 2015, through March 20, 2017, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age.  On November 28, 2016, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

8. The claimant had at least a high school education and was able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills was not an issue in this case because the claimant's past relevant work was unskilled (20 CFR 404.1568).

10.  Prior to November 28, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.  Beginning on November 28, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

12.  The claimant was not disabled prior to November 28, 2016, but became disabled on that date and he continued to be disabled through the date of his death on March 20, 2017.  His disability was expected to last twelve months past the onset date (20 CFR

404.1520(g)).

[Tr. 15–21].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

# IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff challenges the ALJ's decision regarding the disability onset date in several regards. First, Plaintiff asserts that the ALJ failed to properly weigh the opinions of her husband's treating physicians, Robert Shutt, M.D. [Doc. 16 at 5–12] and Phillip Haggerty, M.D. [*Id.* at 13–18]. Further, Plaintiff alleges that the ALJ failed to consider the specializations of the nonexamining state agency physicians. [*Id.* at 18–20]. Lastly, Plaintiff contends that the ALJ failed to properly consider a submitted third-party statement by Wolfenbarger's mother. [*Id.* at 20–23]. The Court will address Plaintiff's specific allegations of error in turn.[2]

### A. Treating Physicians' Opinions

Plaintiff asserts that the ALJ failed to properly consider the opinions provided by her

---

[2] In the Reply [Doc. 20] to the Commissioner's Response, Plaintiff sets forth several potential allegations of error, including regarding Plaintiff's compliance with treatment. However, the Court will not construe Plaintiff's Reply as asserting new claims, but will only consider Plaintiff's arguments to the Commissioner's Response. *See, e.g.*, *Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at *14 (S.D. Ohio Feb. 2, 2012) (declining "to review any new claims of error raised in plaintiff's reply brief"), *report and recommendation adopted by*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012).

husband's treating physicians—Dr. Shutt and Dr. Haggerty.  In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3]  However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.*  If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017).  The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule.  As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.  *See id.* §§ 404.1527; 416.927.

### 1. Dr. Schutt's Opinions

Plaintiff asserts that the ALJ improperly assigned little weight to the opinions of her husband's treating physician, Dr. Schutt. Plaintiff claims that the ALJ "provide[d] a conclusory explanation as to her reasoning for the weight assigned to these two opinions," and that the ALJ misrepresented the substance of both opinions. [Doc. 16 at 8–9].

The parties do not dispute that Dr. Shutt was Wolfenbarger's primary care physician, and the medical record details Wolfenbarger's treatment with Dr. Shutt beginning in April 28, 2014 [Tr. 305]. Wolfenbarger continued to be seen by Dr. Shutt for treatment chiefly of his diabetes, as well as ongoing back pain, fatigue, and bilateral leg pain. [Tr. 298–381]. A November 8, 2016 treatment note assessed Plaintiff with poorly controlled type 2 diabetes mellitus with neuropathy, dyslipidemia, hypertension, benign, insomnia, and degenerative joint disease. [Tr. 583].

In the disability decision, the ALJ reviewed two opinions provided by Dr. Shutt: a June 3, 2015 letter [Tr. 270], as well as a February 19, 2016 Treating Source Statement [Tr. 371]. In the June 3, 2015 letter, Dr. Shutt detailed that he was Wolfenbarger's primary care physician, and that it was his "medical opinion that [Wolfenbarger] has medical problems that make him currently unable to work." [Tr. 270]. Therefore, Dr. Shutt stated that he "think[s] it is reasonable for [Wolfenbarger] to apply for medical disability." [*Id.*].

In the one-page February 19, 2016 Treating Source Statement, Dr. Shutt indicated that Wolfenbarger could not perform sedentary work. [Tr. 371]. Dr. Shutt stated that Wolfenbarger "has severe medical impairments that prevent the patient from performing prior work." [*Id.*]. Additionally, Dr. Shutt noted Wolfenbarger's symptoms, including severe right shoulder, trapezius, and low back pain. [*Id.*]. Under objective findings, Dr. Shutt stated Wolfenbarger's right shoulder and trapezius, as well as low knee and ankle pain. [*Id.*]. Therefore, Dr. Shutt

diagnosed degenerative disc disease, as well as shoulder, knee, and trapezius pain. [*Id.*].[4]

In the disability decision, the ALJ discussed the June 3, 2015 letter and the February 19, 2016 opinion from Dr. Shutt. [Tr. 18]. The ALJ noted that Dr. Shutt opined that Wolfenbarger could not perform even sedentary work [Tr. 371] and was unable to work [Tr. 270]. Further, the ALJ detailed that Wolfenbarger "later reported this was because his job responsibilities were too demanding on his leg and back" during a psychological consultative evaluation on October 20, 2015. [Tr. 18]; *see* [Tr. 368]. However, the ALJ assigned little weight to these opinions, as the ALJ found that they opined on Wolfenbarger's ability to work, which is an administrative finding reserved for the Commissioner, citing 20 C.F.R. § 404.1527(d)(2). [Tr. 18]. Additionally, the ALJ found that although Dr. Shutt was Wolfenbarger's treating physician, his treatment records did not support disabling limitations. [*Id.*]. The ALJ noted that an April 2015 examination demonstrated "some crepitus with pain in the knee but not ligamentous laxity," as well as that while Plaintiff was tender over the lumbar spine, there were no "supporting range of motion limits or mention of gait difficulties." [*Id.*]; *see* [Tr. 267]. Lastly, the ALJ detailed that April 16 and September 15, 2015 treatment notes from Phillip Haggerty, M.D., demonstrate that Wolfenbarger "reported adequate pain management on his current medication," and that "[o]n examination, [his] gait was grossly normal and range of motion was normal." [Tr. 18]; *see* [Tr. 314, 317].

First, with respect to the June 3, 2015 letter, Plaintiff maintains that the ALJ improperly found that Dr. Shutt merely opined that Wolfenbarger was unable to work, as Dr. Shutt also stated that Wolfenbarger's "medical problems make him unable to work," and based on those problems, "it is reasonable for him to apply for medical disability." [Doc. 16 at 10]; *see* [Tr. 270]. Therefore,

---

[4] The Court notes that neither Plaintiff nor the Commissioner detailed the provided symptoms, objective findings, or diagnoses in the opinion.

Plaintiff asserts that Dr. Shutt's June 3, 2015 opinion "is well supported by his treatment notes and other medical evidence in the record," and thus, the ALJ "erroneously afforded this opinion little weight." [Doc. 16 at 11]. The Commissioner responds that the ALJ properly concluded that this letter constituted an opinion on an issue reserved for the Commissioner. [Doc. 19 at 14].

Opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled," are not considered medical opinions "because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1). Thus, opinions on issues reserved to the Commissioner, regardless of the opinion's source, "will not be given any special significance . . . ." *Id.*; *see* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").[5] Nonetheless, such opinions cannot be ignored, and the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3.

The Court finds that the ALJ's finding that Dr. Shutt's June 3, 2015 letter opined on an issue reserved for the Commissioner is supported by substantial evidence. Dr. Shutt's statements that Wolfenbarger was unable to work, as well as that it was reasonable for him to apply for disability, are both opinions on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Although Dr. Shutt stated that Wolfenbarger's medical problems resulted in him being unable to work, this constitutes an opinion that he was disabled. Moreover, the ALJ still considered this opinion, noting that such opinions "must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive

---

[5] The Court notes that SSR 96-5 has been rescinded for claims filed on or after March 27, 2017. *See* SSR 96-2p, 2017 WL 3928298 at *1 (March 27, 2017).

evidence." [Tr. 18]. Ultimately, which the Court will discuss more in detail regarding Dr. Shutt's February 19, 2016 opinion, the ALJ properly considered the evidence of record to find that Dr. Shutt's treatment notes did not support the disabling opinion.

Next, Plaintiff challenges the ALJ's assignment of little weight to Dr. Shutt's February 19, 2016 opinion. Plaintiff asserts that the ALJ improperly found that the opinion was on matters reserved to the Commissioner, as "Dr. Shutt listed [Wolfenbarger's] symptoms, objective findings, and diagnoses, leading to the opinion that [Wolfenbarger could not] perform Light work or Sedentary work . . . [t]hus, he did not opine on an issue reserved to the Commissioner, but instead presented his medical opinion as to Mr. Wolfenbarger's physical restrictions." [Doc. 16 at 12]. Moreover, Plaintiff contends that it is "unclear how the ALJ arrived at her conclusions that prior records do not support the limitations of both opinions by discussing one April 2015 visit." [*Id.*]. Lastly, Plaintiff maintains that because Dr. Shutt was a treating physician, the ALJ was still required to provide good reasons for rejecting the opinion, "regardless if the opinion was about an issue reserved for the Commissioner." [*Id.* at 13].

The Commissioner responds that the ALJ properly found that the opinion was on a matter reserved to the Commissioner, and thus not a "medical opinion" under the applicable regulations. [Doc. 19 at 15]. Further, the Commissioner asserts that Dr. Shutt failed to list any specific limitations in finding that Plaintiff could not perform sedentary work, "but provided only a conclusory finding without any representation of what work related activities [Wolfenbarger] was able to perform." [*Id.* at 16]. Lastly, the Commissioner maintains that the ALJ also found that Dr. Shutt's treatment records did not support a finding of disability.

In reply, Plaintiff asserts that Dr. Shutt provided the basis for his opinion by listing Wolfenbarger's symptoms, diagnoses, and objective findings. Additionally, Plaintiff maintains

that in *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211–12 (6th Cir. 2015), cited in the Commissioner's analysis regarding whether the ALJ was required to consider the opinion on a matter reserved for the Commissioner, the Sixth Circuit held that the ALJ did not err because the treating physician never rendered an opinion regarding the claimant's RFC. Here, Plaintiff claims that Dr. Shutt provided opinions on Wolfenbarger's RFC, which are supported by the medical record. Plaintiff asserts that although the opinion contained a check-the-box form, it included specific limitations, including that Wolfenbarger was unable to lift more than ten pounds at a time, for example, because Dr. Shutt did not find that Wolfenbarger could perform sedentary work. Therefore, Plaintiff claims that "Dr. Shutt's opinion, when taken in the context of the entirety of the form, was that Plaintiff is unable to lift more than 10 or 20 pounds occasionally (as required to do 'Light Work') and that Plaintiff cannot do a good deal of walking and standing." [Doc. 20 at 10].

Ultimately, Dr. Shutt's opinion that Wolfenbarger could not perform sedentary work constitutes an opinion that Wolfenbarger was completely disabled—a conclusion on an issue reserved to the Commissioner. *See, e.g.*, *Stefani v. Comm'r of Soc. Sec.*, No. 12-14418, 2014 WL 1230154, at *7 (E.D. Mich. Mar. 25, 2014) ("Moreover, Dr. Monson's letter—in concluding that Plaintiff could not perform sedentary work—simply purports to resolve issues reserved to the Commissioner; such conclusions are not controlling."); *see also* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of opinion on issues reserved to the commissioner.").

Although Plaintiff claims that Dr. Shutt supported his opinion through detailing Wolfenbarger's symptoms, objective findings, and diagnoses, Plaintiff does not identify how these objective findings or symptoms listed in the opinion contain specific functional limitations, or how

the alleged objective findings within the opinion are inconsistent with the ALJ's finding. Further, the remainder of Dr. Shutt's opinion, other than the check-the-box form indicating that Wolfenbarger could not perform sedentary work, only consisted of general descriptions of Plaintiff's medical impairments, such as degenerative disc disease or right shoulder pain. *See Poulin v. Comm'r of Soc. Sec.*, No. 1:12-CV-1353, 2014 WL 1052610, at *12 (W.D. Mich. Mar. 18, 2014) ("In sum, because the opinions in question were vague and articulated no specific functional limitations, or offered opinions on matters reserved to the Commissioner, it simply cannot be determined whether such are inconsistent with the ALJ's RFC determination. Thus, the Court discerns no error in the ALJ's evaluation of such.").

In the disability decision, the ALJ discussed Wolfenbarger's degenerative disc disease, as well as shoulder, knee, and back pain, which Plaintiff claims Dr. Shutt provided to support his opinion. *See Cole v. Berryhill*, No. 3:16-CV-602-HBG, 2018 WL 1177470, at *6 (E.D. Tenn. Mar. 6, 2018) ("Given [the stated reasons for assigning little weight to the opinion of the plaintiff's treating physician], the Court finds that the ALJ reasonably assigned some weight to Dr. Hunter's letters where no specific functional limitations were assessed. While Plaintiff may disagree with the ALJ's interpretation of the evidence, the Court does not find that it was an unreasonable one, nor is it grounds for remand."). For example, the ALJ extensively reviewed Wolfenbarger's degenerative joint disease, including discussing a June 2015 x-ray showing moderate degenerative changes with decreased motion on the right knee. [Tr. 18]. The ALJ afforded great weight to the opinion of consultative examiner Jeffrey Summers, M.D., who opined that Wolfenbarger could lift up to twenty pounds but would have difficulty with postural activities. [*Id.*]. Additionally, the ALJ extensively reviewed Plaintiff's allegations of back pain, including the results of Wolfenbarger's June 17, 2015 examination with Dr. Summers, a July 14, 2016 x-ray showing "no

subluxation, disc space heights were mostly maintained, and he had osteophytes and hypertrophic changes," and a November 2016 examination with Dr. Shutt which noted tenderness in the lumbar spine area. [*Id.*]. Lastly, the ALJ noted a January 30, 2017 MRI report that "showed disc protrusion on L5-S1, bilateral foraminal narrowing, and bulging disc with mass effect on the right descending nerve root." [*Id.*]; *see* [Tr. 918, 929].

Plaintiff correctly states that a treating physician's opinion on an issue reserved for the Commissioner cannot be ignored, as the ALJ is required to "explain the consideration given to the treating source's opinion." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6 (July 2, 1996); *see, e.g.*, *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) ("[A] treating physician's opinion is only entitled to such . . . deference when it is a *medical opinion*. If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—his decision need only explain the consideration given to the treating source's opinion. The opinion, however, is not entitled to any particular weight.") (internal citations and quotation marks omitted).

However, in the present case, the ALJ noted that little weight was assigned to the opinion because it opined on an issue reserved to the Commissioner, as well as that Dr. Shutt's treatment records did not support such disabling limitations. [Tr. 18]. The ALJ noted Dr. Shutt's status as Wolfenbarger's treating physician, but detailed that although an April 15, 2015 examination demonstrated "some crepitus with pain in the knee but not ligamentous laxity," and Plaintiff was tender over the lumbar spine, there were no "supporting range of motion limits or mention of gait difficulties" in the opinions. [*Id.*]. Further, as the Court has already discussed, the ALJ detailed that April 16 and September 15, 2015 treatment notes from Phillip Haggerty, M.D., demonstrated

that Wolfenbarger "reported adequate pain management on his current medication," and that "[o]n examination, [his] gait was grossly normal and range of motion was normal." [*Id.*]; *see* [Tr. 314, 317].

Plaintiff also asserts that the ALJ improperly failed to detail Plaintiff's peripheral neuropathy with severe asymmetric axonal sensory involvement, and thus the ALJ "ignored the severity of [Wolfenbarger's] physical impairments." [Doc. 16 at 7]. On October 6, 2015, Dr. Shutt referred Wolfenbarger for a nerve conduction study and electromyogram due to his chronic low back pain and tingling, numbness, and coldness in his feet and legs. [Tr. 436]. The results of these studies were consistent with peripheral neuropathy with severe asymmetric axonal sensory involvement and mild asymmetric axonal motor involvement. [*Id.*]. In the disability decision, the ALJ noted the results of the October 6, 2015 EMG and nerve conduction studies which "demonstrated peripheral neuropathy with chronic L5 radiculopathy." [Tr. 18]. Ultimately, the Court finds that any failure by the ALJ to specifically mention Wolfenbarger's reported severe asymmetric axonal sensory involvement does not constitute a basis for remand, as the ALJ clearly considered the EMG and discussed the entire medical record with respect to Wolfenbarger's low back pain. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted).

Accordingly, the Court finds that the ALJ did not disregard Dr. Shutt's opinions solely because they opined on Wolfenbarger's RFC; rather, she considered his status as a treating physician and identified treatment notes which were inconsistent with such disabling limitations.

*See, e.g.*, *Elmer on Behalf of Elmer v. Berryhill*, No. 1:18CV00308, 2019 WL 358526, at *15 (N.D. Ohio Jan. 29, 2019) (finding "an adequate explanation for the ALJ's rejection" of the claimant's treating physicians' opinions, as the ALJ rejected the opinions, in part, because they opined an issue reserved for the Commissioner and were inconsistent with treatment notes, and the ALJ "then cited, with specificity, the treatment notes and diagnostic testing he considered to be inconsistent with the conclusion [the claimant] was unable to work"). Therefore, the Court finds that the ALJ's assignment of little weight to Dr. Shutt's opinions is supported by substantial evidence.

### 2.     Dr. Haggerty's Opinion

Plaintiff asserts that the ALJ improperly failed to recognize Dr. Haggerty as Wolfenbarger's treating physician, despite the long-standing treatment relationship. Plaintiff maintains that the ALJ only discussed two treatment notes, and thus "ignored three years of medical evidence, provided by Dr. Haggerty's records, which demonstrate an overview of [Wolfenbarger's] pain from both a subjective and objective perspective and support his alleged onset date of disability." [Doc. 16 at 15].

The Commissioner responds that Dr. Haggerty failed to provide a medical opinion, and the ALJ appropriately reviewed Dr. Haggerty's treatment records. [Doc. 19 at 19]. In reply, Plaintiff asserts that Dr. Haggerty's "[m]edical records prior to the alleged onset date of April 15, 2015 show limitations, describe symptoms of pain, provide diagnoses, and subjective complaints leading one to conclude that [Wolfenbarger] was slowly deteriorating, and come April 15, 2015, was no longer able to work." [Doc. 20 at 14].

First, Plaintiff does not assert that the treatment records submitted from Dr. Haggerty constituted a medical opinion. 20 C.F.R. § 404.1527(a)(2) defines a medical opinion as one "that

reflects[s] judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

Therefore, the ALJ was not required to accord Dr. Haggerty's treatment records any weight, in particular the deference due to a treating physician's opinion, because they did not provide an "opinion" within the meaning of the regulations. 20 C.F.R. § 404.1527(a)(2); *see, e.g.*, *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (finding a doctor's "report cannot constitute a medical opinion, because it consists primarily of a restatement, often verbatim, of the underlying evidence contained in [claimant's] medical records—evidence that the administrative law judge fully considered and set out in his decision"). "The law and the Social Security regulations recognize a difference between a treating physician's treatment notes or comments, and a treating physician's 'medical opinion.'" *Calloway v. Comm'r of Soc. Sec.*, 2016 WL 1165948, at *11 (E.D. Mich. Mar. 1, 2016), *report and recommendation adopted by*, 2016 WL 1161529 (E.D. Mich. Mar. 23, 2016) (citing 20 C.F.R. § 404.1527(a)(2); *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)")).

Plaintiff asserts that the ALJ "ignored" treatment records from September 13, 2012 until September 15, 2015; for example, Wolfenbarger rated his joint and muscle pain at 6/10 on March 17 and April 16, 2015, as well as that on September 15, 2015, Wolfenbarger stated that his OpanaER prescription was cost-prohibitive, prescribed morphine caused nausea, and described issues with his prescribed fentanyl. [Doc. 16 at 15]; *see* [Tr. 314].

Plaintiff maintains that the ALJ improperly failed to discuss Wolfenbarger's treatment records with Dr. Haggerty prior to the alleged onset date of disability. The Sixth Circuit does "not endorse the position that all evidence or medical records predating the alleged date of the onset of disability . . . are necessarily irrelevant," but rather "recognize[s] that evidence . . . predating the onset of disability when evaluated *in combination with alter evidence*, may help establish disability." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) (emphasis in original); *see also Lendvay v. Comm'r of Soc. Sec.*, No. 1:11 CV 2791, 2013 WL 1283894, at *1 (N.D. Ohio Mar. 27, 2013) ("While medical evidence predating Plaintiff's onset date is not irrelevant, the Court may only consider evidence from those records in combination with evidence after the onset date to determine disability.")

However, the ALJ reviewed Dr. Haggerty's treatment records with respect to Wolfenbarger's pain management. The ALJ noted that Wolfenbarger reported adequate pain management to Dr. Haggerty on April 16, 2015 [Doc. 317] and September 15, 2015 [Tr. 314], thus accurately summarizing Plaintiff's chronic pain management with Dr. Haggerty as of the alleged onset date of disability. Further, the Commissioner correctly states that there is no indication in the medical record that Dr. Haggerty's change of Wolfenbarger's OpanaER prescription, as well as prescribed nausea medication, on September 15, 2015 resulted in a decrease in Wolfenbarger's pain management.

Ultimately, the ALJ is not required to discuss every treatment note in the medical record in detail, "so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006)). The Court finds that the ALJ appropriately reviewed Wolfenbarger's chronic pain management treatment with Dr. Haggerty,

and Plaintiff's assignment of error does not constitute a basis for remand. *See, e.g.*, *Kissling v. Comm'r of Soc. Sec.*, No. 1:15-CV-0807, 2016 WL 4136525, at *3 (W.D. Mich. Aug. 4, 2016) ("The failure to more fully discuss Dr. Marder's treatment notes is not, in and of itself, an error requiring reversal."); *Conroy v. Comm'r of Soc. Sec. Admin.*, No. 5:15CV1789, 2016 WL 3971305, at *7 (N.D. Ohio July 25, 2016) ("The ALJ's failure to cite to cumulative information in Dr. Eider's treatment notes is not error; the ALJ is not required to discuss each individual treatment note in detail.").

### B. Specializations of Nonexamining State Agency Physicians

Plaintiff contends that the ALJ erred in assigning great weight to the opinions of the nonexamining state agency physicians "[b]ecause the state agency doctors' specialties were outside of the scope of [Wolfenbarger's] allegations." [Doc. 16 at 19]. The Commissioner maintains that the ALJ properly afforded great weight to the opinions of the state agency medical consultants, and that their opinions were consistent with the medical record. [Doc. 19 at 20].

Opinions from nontreating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). An ALJ is only required to provide good reason for explaining the weight assigned to the opinion of a "treating source." 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2).

On August 7, 2015, nonexamining state agency consultant Hurley W. Knott, M.D.,

examined the evidence of record at the intitial level of the agency's review. [Tr. 51]. Dr. Knott opined that Wolfenbarger could occasionally lift and/or carry twenty pounds, while frequently lift and/or carry ten pounds. [Tr. 49]. Additionally, Dr. Knott found that Wolfenbarger could sit or stand for about six hours in an eight-hour work day. [*Id.*]. Lastly, Dr. Knott stated that Wolfenbarger could occasionally climb ramps, stairs, ladders, or scaffolds; occasionally stoop, crouch, or crawl, and frequently balance. [Tr. 50]. Charles Settle, M.D., reviewed the evidence of record at the reconsideration level of the agency's review on October 13, 2015, and opined a similar RFC of light work with postural and environmental limitations. [Tr. 65]. In the disability decision, the ALJ assigned great weight to the opinions of the nonexamining state agency consultants, but stated that their finding that Wolfenbarger's spine disorder was a non-severe impairment was not supported by the medical record. [Tr. 19–20].

Plaintiff repeats a pre-hearing objection to the reports of the nonexamining state agency physicians, claiming that "the medical specialties of the state agency physicians are inconsistent with [Wolfenbarger's] impairments." [Doc. 16 at 19]; *see* [Tr. 251]. Plaintiff maintains that as Dr. Settle specialized in gynecology, and Dr. Knott specialized in cardiology, their specialties were "outside of the scope" of Wolfenbarger's medical impairments. [Doc. 16 at 19].

However, "[s]tate agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. While Dr. Settle and Dr.

Knott's specialties did not directly relate to Plaintiff's severe impairments, they are also qualified medical experts in the applicable disability regulations under the Social Security Act.

To the extent that Plaintiff suggests that the ALJ should have addressed all of the regulatory balancing factors, nothing within 20 C.F.R. § 404.1527(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only "consider" the regulatory balancing factors in determining the appropriate weight a medical opinion deserves. 20 C.F.R. § 404.1527(c).

Plaintiff also claims that the nonexamining state agency consultants did not review the entire medical record, citing to the June 3, 2015 letter and February 19, 2016 opinion from Dr. Shutt. [Tr. 270, 371]. "[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion, and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409).

Here, the ALJ reviewed the alleged opinions from Wolfenbarger's treating physician, Dr.

21

Shutt, and detailed how they were not consistent with the overall record and opined on an issue reserved for the Commissioner. Further, when discussing the opinions of the nonexamining state agency consultants, the ALJ stated how the opinions, in part, were not consistent with the medical record, with respect to Wolfenbarger's spine disorder, despite affording great weight to the opinions. The record reflects that the ALJ made an independent determination based on all the medical evidence and that the ALJ's analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Therefore, the ALJ "subjected [Dr. Knott and Dr. Settle's] opinion[s] to scrutiny" sufficient to find that she considered that these nonexamining state agency consultants did not review the entire record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

Ultimately, the ALJ's assignment of great weight to the opinions of the nonexamining state agency consultants is supported by substantial evidence, and Plaintiff's assignments of error do not constitute a basis for remand.

## C. Statement of Wolfenbarger's Mother

Plaintiff claims that the ALJ erroneously disregarded a third-party statement from Wolfenbarger's mother, which provided "a lengthy, in-depth, personal perspective of Mr. Wolfenbarger's impairments, pain, and difficulties in activities of daily living." [Doc. 16 at 23].

Wolfenbarger submitted a statement from his mother, Mary White, on February 1, 2016.

[Tr. 247–49].  In this statement, Ms. White stated that Wolfenbarger's health declined "little by little" starting in his early forties, which resulted in him being unable to work and developing depression.  [Tr. 247].  Additionally, Ms. White detailed that Wolfenbarger's mother-in-law and son assisted in helping him with his daily activities, and provided an example of when Wolfenbarger's family visited him on Thanksgiving and he was unable to get out of bed.  [Tr. 248–49].

The regulations provide that an ALJ may consider information from "non-medical sources."  *See* 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also* Social Security Ruling 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing "other sources" as defined in §§ 404.1513(d) and 416.913(d) as including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers").[6]  In considering statements from "other sources," under Social Security Ruling 06-3p, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  2006 WL 2329939, at * 1.

Plaintiff correctly states that the ALJ failed to address Ms. White's statement in the disability decision.  However, "SSR06-03p's requirement that an ALJ *explain* the weight accorded to these other sources applies to the two categories of 'other sources' enumerated directly above that statement—both sets referring to sources who have seen a plaintiff in their professional

---

[6] SSR 06–03p was rescinded effective March 27, 2017, s*ee Notice of Rescission of Social Security Rulings*, 82 Fed. Reg. 15263–01 (March 27, 2017), but was applicable to the ALJ's decision.

capacity." *Toth v. Berryhill*, No. 1:18-CV-01454, 2019 WL 3416196, at *7 (N.D. Ohio July 12, 2019), *report and recommendation adopted by*, 2019 WL 3412623 (N.D. Ohio July 29, 2019); *see also Smith v. Comm'r of Soc. Sec.*, 572 F. App'x 363, 368 (6th Cir. 2014) (observing that the claimant "ignores the fact that the ALJ was not required" to explain the weight afforded to "[the claimant's] mother's testimony at all").

Further, the ALJ stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence *and other evidence*." [Tr. 18] (emphasis added). Specifically, the Court notes that, pursuant to 20 C.F.R. §404.1529, "other evidence" includes "statements or reports from [a claimant], [a] treating or nontreating source, *and others* about [a claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [claimant's] impairment(s) and any related symptoms affect [the] ability to work. *See also Weaver v. Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2015 WL 64873, at *10 (E.D. Tenn. Jan. 5, 2015) (finding ALJ's statement that she considered the record in full to include unaddressed testimony of the claimant's sister). Additionally, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments, and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).

Ms. White's provided statement details Wolfenbarger's pain management and daily activities, which the ALJ discussed in detail in the disability decision. Additionally, the ALJ specifically noted that she considered evidence as outlined in 20 C.F.R. § 404.1529, which includes statements by others about a claimant's symptoms and impairments. Therefore, the Court finds that the ALJ followed agency procedures in weighing all of the evidence, and that any error in

failing to specifically address the third-party source statement was harmless. Accordingly, Plaintiff's allegations of error do not constitute a basis for remand.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 15**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge